**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| **TAVIANO DEONTRAY GRANT, on behalf of himself and K.G., a minor child,** | |
| Plaintiffs, | |
| v. | Civil Action No. 7:19-CV-146 (HL) |
| **DEREK MANNING, DAVID HANSON, UNKNOWN K-9 OFFICER, and CITY OF HOMERVILLE,** | |
| Defendants. | |

**ORDER**

This case arises out of a routine traffic stop that allegedly went awry. Plaintiff Taviano Deontray Grant, on behalf of himself and his minor son K.G., filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 claiming that after the stop, Defendant Derek Manning violated Plaintiff's constitutional rights by unlawfully searching his vehicle and subjecting him to excessive force. Presently pending before the Court is Defendants Derek Manning, David Hanson, and the City of Homerville's Motion for Summary Judgment.[1] (Doc. 16). The Court notified

---

[1] As a general rule, "fictitious-party pleading is not permitted in federal court." <u>Richardson v. Johnson</u>, 598 F.3d 734, 738 (11th Cir. 2010). An exception arises "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" and when discovery would reveal the identity of the unnamed defendant. <u>Id.</u> (quoting <u>Dean v. Barber</u>, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). Based on Plaintiff's description of the "Unknown K-9 Officer," during discovery Defendants were able to identify the officer as Desmond DiLorenzo.

Plaintiff of Defendants' motion. (Doc. 17). Plaintiff filed no response.[2] After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court concludes that there are no genuine issues of material fact as to any claim and **GRANTS** Defendants' motion. (Doc. 16).

## I.   FACTUAL BACKGROUND

On the afternoon of August 5, 2019, Plaintiff Taviano Deontray Grant and his two-year-old son K.G. were traveling through Homerville, Georgia on their way to Savannah. (Doc. 1, p. 5). Defendant Derek Manning, a police officer for the City of Homerville, stopped Plaintiff's vehicle for speeding near the intersection of Highway 84 West and Woodlake Drive. (Manning Aff., ¶¶ 3-4; Manning Body Camera). Plaintiff was traveling 60 miles per hour in a 45 mile per hour zone. (Doc. 1, p. 5; Manning Aff. ¶ 5; Manning Body Camera).

Manning approached Plaintiff's car. (Manning Body Camera). Manning explained that he stopped Plaintiff for speeding and requested Plaintiff's driver's license. (Id.). Plaintiff immediately began arguing that he had the cruise control set on his vehicle. (Id.). Manning detected the odor of marijuana emanating from Plaintiff's car. (Manning Aff. ¶ 7). He requested that Plaintiff exit the vehicle.

(Doc. 18, p. 1). Plaintiff never moved the Court to substitute DiLorenzo as the proper party nor requested service. Accordingly, Plaintiff's claims against the officer are **DISMISSED** for failure to substitute and serve DiLorenzo timely. Fed. R. Civ. P. 4(m).

[2] Plaintiff has not communicated with the Court since the filing of the parties' proposed scheduling and discovery order in January 2020. (Doc. 13).

(Manning Bodycam). Manning asked if there was anything in the vehicle he needed to know about, including marijuana. (Id.). Plaintiff denied having any drugs and continued arguing with the officer. (Id.). Plaintiff declined to consent to search his car. (Doc. 1, p. 5; Manning Aff., ¶ 9).[3]

While Manning proceeded to issue Plaintiff a traffic citation for speeding, the Unknown K-9 Officer deployed his K-9 partner. (Manning Aff., ¶ 10; Manning Body Camera). The K-9 partner alerted to the presence of narcotics within Plaintiff's vehicle. (Id.). Manning then informed Plaintiff that he was being detained and ordered him to place his hands behind his back. (Manning Body Camera). Plaintiff continued arguing with the officers. (Id.). Manning held onto the tail of Plaintiff's shirt as he attempted to handcuff Plaintiff. (Id.). Plaintiff yelled at Manning to let go of his shirt. (Id.). Manning instructed Plaintiff to sit in the patrol car. (Id.) Plaintiff began struggling with Manning and refused to get into the car, saying that he was not going to jail. (Id.). Manning informed Plaintiff that he was under arrest for obstruction of an officer. (Manning Aff., ¶ 13; Manning Body Camera). Plaintiff still refused to place his feet in the patrol car. (Manning Body

---

[3] Plaintiff's refusal to consent to the search of his vehicle is not depicted on Manning's body camera video. However, as Manning sits in his patrol car writing the traffic citation, Plaintiff can be heard telling the other officer to call the K-9 unit. (Manning Body Camera). The other officer then approaches Manning and says, "I think he wants me to run the dog." (Id.). Manning responds, "If you've got permission, go ahead." (Id.).

Camera). Manning started to close the car door to force Plaintiff to move his feet. (Id.).[4]

The officers returned to Plaintiff's car to conduct a search. (Id.). One of the officers commented, "You can smell it." (Id.). Manning responded, "That's why he's showing out so much." (Id.). Manning located flakes of a green leafy substance on the driver's side floor of Plaintiff's car that field tested positive for marijuana. (Manning Aff., ¶ 14; Manning Body Camera).

Manning issued Plaintiff a traffic citation for speeding and a Municipal Court Summons for Obstruction of a Law Enforcement Officer. (Manning Aff., ¶ 15; Manning Body Camera). Manning did not charge Plaintiff with any drug related offense. (Manning Body Camera). Manning then released Plaintiff. (Manning Aff., ¶ 15; Manning Body Camera).

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed

[4] Plaintiff's son remained in Plaintiff's vehicle during the entire stop. (Manning Body Camera). On Manning's body camera video, music can be heard in the background as the officers searched Plaintiff's car, leading the Court to believe that Plaintiff's vehicle remained running. (Id.). At the very least, the doors to the car were open. (Id.). The child never cried or appeared distressed. (Id.).

must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

5

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). When reliable video evidence is available, the court should view the facts in the light depicted by the video recording. Id. at 381; see also Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010) (inferences for the nonmoving party may be drawn only "to the extent supportable by the record").

The moving party must meet its burden even when, as here, the moving party fails to respond to the motion for summary judgment. Courts "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop. Located at 5800 SW 7th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). In considering the merits of the unopposed motion, a court

> need not sue sponte review all of the evidentiary materials on file  at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment.

Id. The court cannot simply accept the facts stated in the moving party's statement of material facts as true; rather, the court must review the movant's citations to the record and confirm that there are no genuine issues of material fact. Id. at 1103 n.6.

### III.    DISCUSSION

Plaintiff asserts claims against Defendants under § 1983 for unreasonable search and seizure, unlawful detention, and excessive force and under Georgia law for assault, intentional infliction of emotional distress, and false arrest.[5] Defendant Manning asserts that he is entitled to qualified immunity because he had probable cause to search Plaintiff's vehicle and because there is no evidence that he employed excessive force. Defendants Manning and Hanson further contend that absent evidence of actual malice, official immunity shields them against Plaintiff's state law claims. Defendant City of Homerville argues that Plaintiff's claims against the City fail as a matter of law because Plaintiff has not demonstrated that the City caused any constitutional violation.

### A.    Plaintiff's Claims Against Defendant Manning

#### 1.    Qualified Immunity

Defendant Manning argues qualified immunity shields him from Plaintiff's Fourth Amendment claims that Manning unlawfully searched Plaintiff's vehicle and employed excessive force in effecting his arrest. The Court finds that Plaintiff

---

[5] Plaintiff filed this lawsuit on behalf of himself and his minor child. However, other than claiming that his son was present during the events in question, Plaintiff has not asserted facts sufficient to state a claim for a constitutional violation on behalf of his son. Any allegations brought on behalf of the minor child accordingly are **DISMISSED without prejudice**.

has failed to present evidence sufficient to establish a constitutional violation. Manning therefore is entitled to qualified immunity.

### a.   General Principles

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Defendant Manning was

acting within his discretionary authority when he arrested Plaintiff. See Crosby, 394 F.3d at 1332 ("[M]aking an arrest is within the official responsibilities of a sheriff's deputy."); Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (concluding that a state trooper was clearly acting within the scope of his discretionary authority when he charged and arrested the plaintiff). Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original). To demonstrate that the official is not entitled to qualified immunity, the plaintiff must show (1) that the official violated a constitutional right; and (2) that the constitutional right violated was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman, 370 F.3d at 1264.

### b.   Search and Seizure

Plaintiff alleges that Manning unlawfully searched his vehicle without his consent and without probable cause in violation of his Fourth Amendment rights. (Doc. 1, p. 5). The undisputed evidence shows that Manning conducted a lawful traffic stop. During the stop, Manning detected the smell of marijuana, which provided probable cause for the ensuing search.

"The Fourth Amendment protects individuals from unreasonable search and seizure." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); U.S. Const., amend. IV. "Generally, a search is reasonable under the Fourth Amendment when supported by a warrant or when the search fits within an established exception to the warrant requirement." United States v. Prevo, 435 F.3d 1343, 1345 (11th Cir. 2006). This case falls within the automobile exception. Under that exception, a warrantless search of a car is constitutional if (1) the car is operational; and (2) probable cause exists to believe that it contains contraband or evidence of a crime." United States v. Lanzon, 639 F.3d 1293, 1299-1300 (11th Cir. 2011); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003).

Defendant Manning initiated the traffic stop to issue Plaintiff a speeding citation; thus, the evidence is clear that Plaintiff's vehicle was operational.[6] Manning then detected the odor of marijuana coming from the car as he spoke with Plaintiff. Courts have long held that the smell of marijuana provides reasonable suspicion to extend the duration of a traffic stop to investigate possible criminal conduct. See e.g., United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010) ("Given that the smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct, the

---

[6] Plaintiff's Complaint does not challenge the validity of the traffic stop.

initial stop was valid."); <u>United States v. Tobin</u>, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when . . . he detected what he knew from his law enforcement experience to be the odor of marijuana."); <u>United States v. Lueck</u>, 678 F.2d 895, 903 (11th Cir. 1982) ("At the point marijuana was smelled by [the officer], probable cause to believe a crime had been committed . . . arose."). Because Plaintiff has not produced evidence from which a reasonable jury could conclude that Defendant Manning violated Plaintiff's constitutional rights when he conducted the search of Plaintiff's vehicle, Manning is entitled to qualified immunity. The Court accordingly **GRANTS** Defendants' motion for summary judgment as to this claim.

### c.    Excessive Force

Plaintiff alleges in his Complaint that Manning "angrily" and "forcefully assaulted" him when he grabbed and twisted Plaintiff's shirt around his neck and choked him. (Doc. 1, p. 5). The body camera footage does not support Plaintiff's position. Absent evidence that Manning applied excessive force while arresting Plaintiff, Manning is entitled to qualified immunity on this claim.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." <u>Lee</u>, 284 F.3d at 1198 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989)). "A genuine 'excessive force' claim relates to the

manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Bashir v. Rockdale Cnty., Ga., 445 F.3d 1323, 1332 (11th Cir. 2006)). An officer's use of force is excessive under the Fourth Amendment if the use of force was "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. Graham, 490 U.S. at 397. "[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case." Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000).

At the summary judgment stage, a court cannot "simply accept the officer's subjective version of events, but rather must reconstruct the event in the light most favorable to the non-moving party and determine whether the officer's use of force was excessive under those circumstances." Fils v. City of Aventura, 647 F.3d 1272, 1288 (11th Cir. 2011). In evaluating the necessity of the force, the court should examine "'(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Brown v. City of Huntsville, Ala., 608 F.3d 724, 738 (11th Cir. 2010)). "Qualified immunity applies unless application of the standard would inevitably lead a reasonable officer in the defendant's position to conclude that

the force was unlawful." <u>Gold v. City of Miami (Gold I)</u>, 121 F.3d 1442, 1446 (11th Cir. 1997) (internal quotation marks and citation omitted).

The video captured by Manning's body camera shows that the force he exerted to arrest Plaintiff was reasonably proportionate to the need for that force. Plaintiff became argumentative the moment Manning approached Plaintiff's vehicle to explain the reason for the stop. (Manning Body Camera). Plaintiff complied when Manning requested that he exit the car. (<u>Id.</u>). But Plaintiff continued to insist that he was not speeding. (<u>Id.</u>). Manning calmly replied that he was not going to argue the merits of the stop on the side of the road and proceeded to issue Plaintiff a speeding citation. (<u>Id.</u>). Plaintiff persisted with cursing and arguing with the Manning, saying "I'm going to get you in Court"; "you can call the dog on me"; and "I'm ready for this." (<u>Id.</u>).

After the Unknown K-9 Officer's K-9 partner alerted to narcotics in Plaintiff's car, Manning informed Plaintiff that he was being detained and instructed him to place his hands behind his back. (<u>Id.</u>). Manning held on to the back of Plaintiff's shirt as he secured the handcuffs. (<u>Id.</u>). Manning then directed Plaintiff to sit in the patrol car. (<u>Id.</u>). Plaintiff refused. (<u>Id.</u>). Manning placed Plaintiff under arrest for obstruction of an officer and again told Plaintiff to sit in the car. (<u>Id.</u>). Plaintiff still refused to place his feet inside the car. (<u>Id.</u>). Manning started closing the door of the patrol car to force Plaintiff to move his feet. (<u>Id.</u>).

13

The video evidence disproves Plaintiff's allegations that Manning twisted Plaintiff's shirt around his neck and choked him. (Doc. 1, p. 5; Manning Body Camera). Rather, Manning employed a reasonable amount of force to gain control of Plaintiff and to ensure compliance with his lawful commands. A reasonable officer in Manning's position would not find the amount of force used unlawful. Plaintiff thus has failed to establish a constitutional violation on his excessive force claim, and Manning is entitled to qualified immunity.

### B.    Plaintiff's Claims Against Defendant Hanson

Defendant David Hanson is the Chief of Police for the City of Homerville. In his Complaint, Plaintiff does not assert that Defendant Hanson had any personal involvement in the August 5, 2019 traffic stop. Plaintiff alleges only that Defendant Hanson, as a supervisor or person in charge "had knowledge of and acquiesced in his subordinate[']s improper violations." (Doc. 1, p. 4).

"[S]upervisors cannot be held liable for the acts of employees solely on the basis of respondeat superior." Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985) (citing McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir. 1981)). "[U]nder § 1983, a supervisor can be held liable for failing to train his or her employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the officer comes into contact." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1052 (11th Cir. 2014) (internal

14

quotation marks, alteration, and citation omitted). To establish a claim that a supervisor violated a plaintiff's constitutional rights by failing to train and supervise subordinates, a plaintiff "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." Id. (quoting Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011)). "There must be a causal connection between the actions of the supervisory official and the alleged deprivation." Fundiller, 777 F.2d at 1443 (citations omitted). "This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action." Id.

Plaintiff has failed to show that his constitutional rights were violated during the search of his vehicle and his subsequent arrest. Even assuming Plaintiff established a violation of his rights, Plaintiff has not produced evidence that the constitutional violation resulted from a lack of adequate training or Defendant Hanson's deliberate indifference to those rights. The Court accordingly **GRANTS** summary judgment as to Plaintiff's claims against Defendant Hanson.

### C.   Plaintiff's Official Capacity Claims

Plaintiff's Complaint does not specify whether his claims against Defendants Manning and Hanson are in their individual or official capacities. To the extent that Plaintiff intends to pursue his § 1983 claims against these Defendants, those claims must be dismissed. A § 1983 lawsuit against a government official in his official capacity is considered a suit against the governmental entity he represents. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1309 (11th Cir. 2009) (citation omitted). Manning and Hanson are both employed as officers with the City of Homerville Police Department. Thus, Plaintiff's suit against Manning and Hanson in their official capacities is the equivalent of suing the City of Homerville, which is named as a defendant in the case. The official capacity claims therefore are **DISMISSED** as redundant.

### D.   Plaintiff's Claims against Defendant City of Homerville

Plaintiff also claims that the City of Homerville is responsible for the alleged constitutional violations. The law is well-established that a municipality cannot be held liable for a § 1983 violation premised on a respondeat superior theory of liability; rather, the municipality must itself cause the constitutional violation. Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)). "A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of

municipal policy or custom." <u>Lewis v. City of West Palm Beach, Fla.</u>, 561 F.3d 1288, 1293 (11th Cir. 2009). "[I]t is generally necessary to show a persistent and wide-spread practice" to support the existence of a policy or custom. <u>Depew v. City of St. Mary's</u>, 787 F.2d 1496, 1499 (11th Cir. 1986).

A municipal policy or custom may include a failure to provide adequate training provided the deficiency "evidences a deliberate indifference to the rights of its inhabitants." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). A city "is not automatically liable under [§]1983 even if it inadequately trained or supervised its police officers and those officers violated [a plaintiff's] constitutional rights. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998). An allegation of a failure to train or supervise can be the basis for liability under § 1983 only in the "limited circumstance" where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." <u>Id.</u> (citing <u>City of Canton</u>, 489 U.S. at 387 ("[M]unicipal liability under § 1983 attaches . . . [o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases.") (internal quotation marks omitted)). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." <u>Id.</u> at 1351.

Again, Plaintiff has failed to establish a violation of his constitutional rights. And, even if he could produce evidence of a violation, Plaintiff has not shown that the City of Homerville maintains a policy or custom that caused a constitutional violation and injury. The City of Homerville therefore cannot be held liable under § 1983.

### E.   Plaintiff's State Law Claims

Because Plaintiff has produced no evidence of actual malice, Defendants are entitled to official immunity as to Plaintiff's state law claims. The doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 274 Ga. 122, 123 (2001). A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a willful or wanton manner; with actual malice; or with the actual intent to cause injury." Brown v. Penland Constr. Co., 281 Ga. 625, 625-26 (2007); see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). Under Georgia law, the decision to make a warrantless arrest "is considered a discretionary act within the scope of the officer's official functions." Mercado v. Swoope, 340 Ga. App. 647, 650 (2017). There is no dispute that Defendants were acting within their discretionary authority when they arrested Plaintiff. The burden shifts to Plaintiff to show that

Defendants acted with actual malice. See Adams v. Hazelwood, 271 Ga. 414 (1999).

In the context of official immunity, "actual malice" requires "a deliberate intention to do wrong." Bateast v. DeKalb Cnty, 258 Ga. App. 131, 132 (2002). A "deliberate intention to do wrong" means "the intent to cause the harm suffered by the plaintiff[ ]." Murphy v. Bajjani, 282 Ga. 197, 203 (2007). Similarly, "actual intent to cause injury" requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Kidd v. Coates, 271 Ga. 33 (1999). "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies." Selvy v. Morrison, 292 Ga. App. 702, 706 n.17 (2008). "Our task is not to decide, with the benefit of hindsight, what the officers should have done. We are concerned only with whether their behavior showed a deliberate intent to commit a wrongful act." Id. at 707.

There is no evidence of any relationship between Plaintiff and Defendants prior to the August 5, 2019 traffic stop. Manning further attests that he harbors "no personal feelings" or "ill will" toward Plaintiff. (Manning Aff., ¶ 19). Additionally, Manning's body camera footage does not depict any evidence of malicious intent. Absent evidence of "a deliberate intention to commit a wrongful

act," <u>Selvy</u>, 292 Ga. App. at 707, Defendants are entitled to official immunity on each of Plaintiff's state law claims.

### E.   Punitive Damages

Defendants move for summary judgment on Plaintiff's prayer for punitive damages. Having concluded that Defendants are entitled to qualified immunity as to Plaintiff's § 1983 claims and official immunity as to Plaintiff's state law claims, Plaintiff's claim for punitive damages fails as a matter of law.

## VI.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 16).

**SO ORDERED**, this the 30th day of March, 2021.


*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks